198 So. 443
#### HARRIS BROS. v. STATE.
4 Div. 161.

Supreme Court of Alabama.
Oct. 10, 1940.

Thos. W. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for petitioner.

Mulkey & Mulkey, of Geneva, opposed.

THOMAS, Justice.

The question presented for decision by the certiorari is whether transient vendors or peddlers under Schedule 146, § 348, of the Revenue Code, as amended (General Acts of 1936–37, Sp.Sess., p. 277), have to pay the maximum license levied under Schedule 32, § 348, p. 451 (Revenue Act of 1935), of said Code for the privilege of selling tobacco products in rolling stores and throughout the county or counties.

The Biennial Report of the Attorney General for 1936–38, p. 526, was to the effect that "a rolling store who sells tobacco products as outlined in the inquiry is subject to the highest license which is imposed by Schedule 32, Revenue Act of 1935, p. 451." The Attorney General said: "I think, that proviso contemplates the issuance of a license for a fixed place of business. A rolling store necessarily has no fixed place of business and a license would, therefore, not be issuable to authorize it to sell one of the products for which a special license is required and which is *required to be sold at a fixed location.*" [Italics supplied.]

The later opinion of the Attorney General adverted to the fact that the foregoing opinion was rendered before Schedule 146 of Section 348 of Article 13, Chapter 1, of the Revenue Act of 1935 was amended by the legislature according to the terms of Act

No. 230, General Acts of 1936–37, Sp.Sess., p. 277, by addition thereto of the following as italicized: "The payment of the privilege license required by this Schedule shall not authorize any transient vendor or peddler to sell any goods, wares or merchandise for which a higher or specific license is required without the payment of such license in addition to the license herein levied, or to sell any goods, wares or merchandise that are by law required to be sold at a fixed location, *except upon the payment of the maximum license levied under the Schedule or Schedules of this chapter for the sale of merchandise at a fixed location.*"

The effect of both opinions of the Attorney General was that the highest license required to be paid pursuant to the terms of Schedule 32, supra, for "the sale of the tobacco products is to be $15.00 as a State license, plus the county license," according to the population basis that obtained.

What, then, are the several requirements of the General Revenue Law of 1935, p. 256, Schedule 32, § 348, p. 451; Schedule 146, § 348, p. 499; and the general provisions of law contained in § 349, p. 557; § 350, p. 557; § 352 (a), pp. 558–59; §. 354, p. 561; § 356, p. 561 (Acts 1935), as applied to this decision; the state of facts being as stated in the opinion of the Court of Appeals?

The uncontroverted facts are that the defendants, a partnership, were engaged in the mercantile business at Slocomb, Geneva County, Alabama, a town of less than 1,000 inhabitants, in the years 1936, 1937 and 1938. Their store, or place of business in said town, was kept open during business hours throughout each of said years; for the privilege of conducting their mercantile business the partnership paid the regular license or privilege tax levied by law to the State of Alabama and to the County of Geneva. Among the articles of merchandise sold by the partnership from its general store in Slocomb were tobacco and tobacco products; for the privilege of selling which products from said store, the partnership also *paid the special tobacco tax* levied by law, required in license schedule, § 348, Schedule 32, p. 451. In addition to the merchandise business conducted in its store by the defendants, said partnership took from said store a part of their stock, wares and merchandise, tobacco and tobacco products, loaded the same into a motor vehicle equipped for the purpose and sent said vehicle with that merchandise on a regular

itinerary, each business day. This motor vehicle would leave defendants place of business in Slocomb at approximately eight o'clock A. M. and would return thereto upon the completion of its regular round trip by eight o'clock P. M. of each business day. The defendants sold their goods and merchandise, including tobacco and tobacco products, from this motor vehicle to customers each day on the schedule route for that day in Geneva County. For the privilege of operating its rolling store over and along the public highways of Geneva County, and selling goods, wares and merchandise therefrom, the defendants paid to the State of Alabama and County of Geneva a license or privilege tax of $150 for each of said years, as provided by law—$100 of said amount being for the state and $50 thereof being for Geneva County, as required in Schedule 146, § 348, p. 499, General Acts 1935.

With reference to the special tobacco products license, or privilege tax, Mr. Harris testified that on demand of some agent of the State for 1936–37, and subsequent years, "we paid the tobacco tax charged against the rolling store in the sum of $3.50 obtaining the license from the Judge of Probate;" that the population of Slocomb, according to the last census, is a little less than one thousand people and "we do business at that place."

It will be noted that the specific amendment in question was in accord with the opinions of the Attorneys General, to which we have adverted. The amendment contained a definition of a transient vendor or peddler (General & Local Acts of Alabama, Special Session 1936–37, p. 278), which is as follows: "When used in this Schedule, the words 'Transient Vendor or Peddler' shall be held to include any person embraced in any of the following classifications: (a) All persons commonly and generally termed 'Peddlers' and falling within the usual and commonly understood definition of 'peddler'; or, (b) all persons acting for themselves or as an agent, employee or salesman, or in any capacity for another whether as owner, bailee, or other custodian of goods, wares and merchandise, going from person to person, house to house, or place to place, and selling or offering to sell, or consigning or offering to consign, other than to a retail merchant for re-sale, goods, wares and merchandise; or, (c) all persons who do not keep a regular place of business, open at all times in regular business hours at the same place, going from person to person, house to house, or place to place, or from town to town, and selling or offering for sale, other than to a retail merchant, goods, wares, and merchandise which they carry with them and who deliver the same at the time of or immediately after the sale; or, (d) all persons who go from person to person, house to house, place to place, soliciting orders, other than from a retail merchant for re-sale, by exhibiting samples, or taking orders and thereafter making delivery of the goods or filling the order, without carrying or sending the order to the permanent place of business. This Schedule shall not apply to a person or to any number of his immediate household, selling or offering to sell dairy, poultry, or farm products raised, produced or grown · by himself, or the immediate members of his household, or such products preserved, bottled or canned by himself, or the immediate members of his household, or to persons peddling wood, charcoal, fruit or vegetables; or to blind persons or persons physically disabled to the extent of thirty per cent (30%), such disability to be certified to by a reputable physician and the local license inspector, *operating other than a rolling* store, or to peddlers of poultry and eggs, or to persons selling fish, shrimp, crabs or to other sea foods. *These and none other shall be exempt from the payment of the license tax levied by this Schedule.* The payment of the privilege license required by this Schedule *shall not authorize any transient vendor or peddler to sell any goods, wares or merchandise for which a higher or specific license is required without the payment of such license in addition to the license herein levied, or to sell any goods, wares or merchandise that are by law required to be sold at a fixed location, except upon the payment of the maximum license levied under the Schedule or Schedules of this chapter for the sale of merchandise at a fixed location."* · (Italics supplied.)

Several of the material schedules to which reference is made, are Schedule 32, § 348, p. 451, Acts of 1935, requiring that each retail dealer in tobacco products shall pay to the state the tax indicated for *"each place of business owned or operated by retail dealers, whether under the same roof or not"*; and § 348, Schedule 159, Section 1, p. 530, Acts of 1935, which

is as follows: "Section 1. That in addition to all other taxes of every kind now imposed by law and which are not specifically repealed by this Chapter, every person, firm, corporation, club or association, within the State of Alabama, who sells and/or stores and/or receives for the purpose of distribution to any person, firm, corporation, club or association within the State of Alabama, cigars, cheroots, stogies, cigarettes, smoking tobacco, chewing tobacco, snuff, or any substitute therefor, either or all, shall pay to the State of Alabama for State purposes only a license or privilege tax which shall be measured by and graduated in accordance with the volume of sales of such person, firm, corporation, club or association in Alabama. * * *", and the provisions of Schedule 146, § 348, p. 499 (Acts of 1935), requiring that each person traveling on an animal or using a vehicle other than a motor vehicle doing business as a transient vendor or peddler as defined in this schedule, selling or offering to sell any goods, wares or merchandise other than to a merchant for resale shall pay a privilege license to the State of $15 and $5 for the county in each county in which such transient peddler or vendor does business from such vehicle. And that further provision in the last named Schedule 146, supra, that "each person using a motor vehicle, doing business as a transient vendor or peddler as defined in this schedule displaying, selling or offering to sell * * * at retail shall pay to the State in order to engage in such business the following privilege licenses: [The schedule being set out.]

Thus is the legislative intent expressed as to the sale of tobacco products—which are to be sold and taxed at fixed locations, as indicated.

The effect of Sections 349, 350, p. 557 (Acts 1935), is that when a person who seeks to obtain a license to engage in or carry on any business, employment or profession in any definite place in a county or city in Alabama, he must apply to the judge of probate for license, and that "such judge shall issue the license countersigned by him, in the form and on the blank to be furnished to him by the State Comptroller, which shall set forth and specify the name of the person, firm or corporation applying therefor, the business or act which it is proposed to carry on or do thereunder, the name of the street or location. * * * (a) Whenever a license is levied in this Act, there shall be collected both a State and County license *for each place of business,* except as specifically otherwise provided. * * *"

The general provisions of Section 352, p. 558 (Acts 1935), make it unlawful for any person, firm or corporation to engage in or carry on any business or do any act for which a license is required now or may hereafter be by law required without first having paid for and taken out a license therefor in the manner required in the General Revenue Act of Alabama. Acts 1935, § 354, p. 561; § 356, p. 561, and § 360, p. 562.

Schedule 146, § 348, p. 499 (Acts 1935), relating to rolling stores, expressly authorizes the sale of merchandise other than at fixed locations, but said section is not inconsistent with the provisions of Section 354, p. 561 (Acts 1935), providing for sales at fixed locations not otherwise expressly authorized. We are of the opinion and hold that it was the legislative intent that tobacco products should be sold at fixed locations, which is evidenced by the provisions of Section 349, p. 557 (Acts 1935), wherein it is said that the license tax is required to engage in business at a definite place in the county or city. The legislative intent is shown in the express provision that no person shall be allowed the privilege of selling throughout the state under one license except by special provision of law. Section 352, pp. 558, 559, Acts 1935.

Thus the several schedules that apply are relative to the sale of tobacco products at fixed locations and support the holding that the license is required to be paid for each location. Since tobacco products are to be sold at fixed locations, under the express provisions of the amended statute (Schedule 146, Acts Special Session 1936–37, p. 277) the defendant is required to pay the maximum license levied by Schedule 32, § 348, p. 451 (Acts 1935).

It may be said that Act No. 665 (H. 934-McGowin) approved July 5, 1940, entitled "An Act to Amend Section 16 of Schedule 159, etc.," has no application under the agreed statement of facts and is not considered in this decision.

Under the foregoing statutes the Court of Appeals held that the amount of the license should be $2 for the state and $1 for the county. In this holding there was

error. The trial court held that the amount of this privilege license or tax should be $15 for the state and $7.50 for the county. Such was the constructions placed upon the statutes in the opinions of the Attorneys General, heretofore adverted to. Such are the requirements of the law that obtained under the agreed statement of facts.

The opinion of the Court of Appeals is not in accord herewith and the writ is granted.

Writ of certiorari granted.

All the Justices concur.